**IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | |
|---|---|
| **MATTHEW TRACEY** <br> 114 Independence Ct. <br> Centreville MD, 21617 <br><br> *Plaintiff*, <br><br> v. <br><br> **SAIA MOTOR FREIGHT LINE, LLC** <br> 11465 Johns Creek Parkway, Suite 400 <br> Johns Creek, GA 30097 <br><br> <u>Serve on:</u> <br> Resident Agent The Corporation Trust, Incorporated <br> 2405 York Road, Suite 201 <br> Lutherville Timonium, MD 21093 <br><br> *Defendant.* | * <br> * <br> * <br> * <br> *   Case No.: <br> * <br> * <br> * <br> *   **JURY DEMAND** <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Matthew Tracey, by and through his attorney Matthew D. Skipper of Skipper Law, LLC, hereby files this Complaint against Defendant Saia Motor Freight Line, LLC and in support thereof respectfully states as follows:

## Nature of the Claims

1. Plaintiff is a former employee of the Defendant who was unjustly terminated by Defendant.

2. This is an action for equitable relief and monetary damages to address Defendant's unlawful employment practices against Plaintiff, including Defendant's unlawful discrimination against Plaintiff because of his race and age and unlawful retaliation for Plaintiff opposing discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981

("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"); and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq*.

3. Plaintiff was also not paid all wages due to him at the conclusion of his employment, in violation of the Maryland Wage Payment and Collection Act, Md. Code Ann., Lab. & Empl. § 3-501 *et seq*.

4. Plaintiff additionally brings this action to recover unpaid wages, liquidated damages or interest, attorneys' fees and costs, and treble damages under the Maryland Wage Payment and Collection Law for Defendant's willful failure to pay wages due in accordance with Maryland law.

## Parties

5. Plaintiff Matthew Tracey ("Plaintiff" or "Mr. Tracey" herein) is an adult resident of Queen Anne's County, Maryland, is white and was 44 years old at the time of his termination. At all times relevant hereto, Mr. Tracey was an "employee" under all applicable statutes.

6. Defendant Saia Motor Freight Line, LLC ("Defendant" or "Saia" herein) is a limited liability company organized under the laws of the State of Louisiana with its principal place of business located at 11465 Johns Creek Parkway, Suite 400, Johns Creek, Georgia 30097. Defendant employed Plaintiff at its BWI Terminal located in Laurel, Maryland in Prince George's County. At all relevant times, Defendant met the definition of an "employer" under all applicable statutes and is subject to all applicable and cited statutes.

## Venue and Jurisdiction

7. Plaintiff adopts and incorporates the allegations in all previous paragraphs as if

fully stated herein.

8. This Court has personal jurisdiction over Defendant as Defendant employed Plaintiff at a place of business located in Laurel, Prince George's County, Maryland.

9. The acts and omissions of Defendant as referenced in this complaint occurred predominately in Maryland in the Southern Division.

10. This Court has subject matter jurisdiction because Plaintiff alleges violations of various federal statutes herein, including Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA").

11. This Court has supplemental jurisdiction over the state law claims that arose from related acts and omissions of Defendant.

12. Venue is appropriate in this District because a substantial part of the acts or omissions giving rise to this claim occurred in Maryland.

13. Lastly, Plaintiff has exhausted administrative remedies for the claims that so required. Plaintiff filed a timely Complaint with the Maryland Commission on Civil Rights ("MCCR") and on June 22, 2020, received the Right to Sue letters customarily issued by the EEOC. Said letter is attached to this Complaint as **Exhibit 1**. This Complaint, filed within 90 days of Plaintiff's receipt of the Right to Sue letters, is therefore timely.

## Facts Common to All Counts

14. Plaintiff adopts and incorporates the allegations in all previous paragraphs as if fully stated herein.

15. Plaintiff was employed by Defendant as a Dock Supervisor beginning in September 2017.

16.     Plaintiff was an employee who consistently provided Defendant with high-quality work.

**Directive to Discriminate**

17.     In December 2017 Plaintiff was instructed by his immediate supervisor, William Martin, that Plaintiff was to be more lenient with African-American employees regarding disciplinary issues than with employees of other races.

18.     Plaintiff opposed this discriminatory directive, believing it unlawful and further believing it would create tension and acrimony in the workplace.

19.     When Plaintiff voiced his opposition in response to this directive, Mr. Martin stated "Well, that's what we've been instructed to do" or words to that effect.

20.     Mr. Martin conveyed to Plaintiff that the directive came from Regional Human Resources at Saia.

21.     After December 2017, Defendant on several occasions pressured or required Plaintiff to treat African American employees more favorably than employees of other races.

22.     For example, Plaintiff was pressured to modify the timecards of African American employees after-the-fact to remove tardiness from the employees records even though the timecards as they existed were accurate and the African American employees involved were actually late to work on the dates in question.

23.     The Defendant never pressured Plaintiff to alter or modify the timecards of non-African American employees.

24.     As a second example, Defendant directed Plaintiff to withdraw disciplinary sanctions appropriately levied against a younger (less than 40 years of age) African American employee who was caught sleeping in the employee bathroom in violation of company policy.

25. The younger African American employee was actually sleeping in the employee bathroom, deserved disciplinary sanctions and there existed no legitimate non-discriminatory reason for Defendant to withdraw those sanctions.

26. Defendant never pressured or directed Plaintiff to withdraw disciplinary sanctions levied against a non-African American employee.

27. On multiple occasions, Plaintiff opposed the discriminatory directive regarding disciplinary actions that was communicated to him by his supervisor.

**The Safety Audit and Increased Enforcement**

28. Following an unfavorable safety audit in July 2018, Plaintiff and other managers made the decision to more strictly enforce the safety procedures of the Defendant.

29. The new emphasis on enforcement led Plaintiff to issue many Performance Improvement Plans ("PIPs") to employees for safety and other violations.

30. Four of the PIPs issued by Plaintiff were issued to Tyler Dunston ("Mr. Dunston"), an African-American employee of Defendant who was less than 40 years of age.

31. The PIPs issued by Plaintiff to Tyler Dunston were properly issued and were in accordance with Defendant's Employee Manual and company policy.

32. It was in fact Plaintiff's job and responsibility to enforce Defendant's policies, especially those relating to job safety, and Plaintiff discharged these duties fairly and properly.

**The 24 October 2018 Incident**

33. On October 24, 2018, Plaintiff heard loud music coming from the dock at his place of work.

34. Mr. Tracey discovered the source of the music was a Bluetooth speaker, which he subsequently turned off as the music could impair communication and was therefore a safety

hazard.

36. Immediately thereafter, Tyler Dunston aggressively confronted Mr. Tracey about turning off the music.

36. A short while later that same day, Mr. Dunston was still agitated about Mr. Tracey turning off the music, and Mr. Dunston began to swear at and threaten physical violence against Mr. Tracey.

37. Specifically, Dunston said, in the presence of Plaintiff and other witnesses, that Dunston would "kick his ass" (referring to Mr. Tracey) and "punch his face."

38. Mr. Tracey immediately reported the incident to Human Resources ("HR"), and a fellow supervisor who witnessed the incident corroborated Mr. Tracey's account of the events.

39. During HR's investigation, two of Mr. Dunston's friends, Allan Carrillo ("Mr. Carillo") and Michael Baker ("Mr. Baker") gave nearly identical, one-sentence statements to HR, in which they both stated that they saw Plaintiff "bump Tyler" and that Plaintiff was "getting in [Mr. Dunston's] face."

40. These statements were false, as Plaintiff and Mr. Dunston did not touch one another during the argument.

41. Despite the false statements, a majority of the witnesses to the incident corroborated Plaintiff's account – namely, that there was no physical touch or contact between Mr. Tracey and Mr. Dunston during the incident.

42. In the following few days, Mr. Dunston, Mr. Carrillo, and Mr. Baker made multiple threats of physical violence against Mr. Tracey and his family, which were reported to Defendant by other employees.

43. The threats were graphic in nature and included threats of sexual violence against

Plaintiff's wife and daughter.

44. Defendant took no disciplinary action against Mr. Dunston or his friends for making such threats, even though such threats were a violation of company policy.

45. About two weeks after the incident, on November 6, 2018 Defendant terminated Mr. Tracey for what it deemed "unprofessional conduct."

46. Defendant terminated Plaintiff even though Plaintiff had never been disciplined previously and had never been subjected to the progressive discipline policy set forth in Defendant's Employee Manual.

47. Despite receiving multiple disciplinary sanctions and despite having caused the October 24th incident, Tyler Dunston was not terminated and, to the best of Plaintiff's knowledge, was not disciplined at all for Mr. Dunston's multiple violations of company policy that had occurred up to that point.

48. Following Plaintiff's termination, he had difficulty finding new work due to the fact that he was terminated from Saia for alleged "unprofessional behavior".

49. Plaintiff eventually was forced to secure employment at a lower rate of pay with less benefits than he received while employed with Defendant.

50. Additionally, Plaintiff's new employment is not in a supervisory capacity and therefore requires physical duties which exacerbate preexisting medical issues.

51. Defendant treated Plaintiff differently than Plaintiff's African-American coworkers.

52. Defendant's termination of Plaintiff was without cause and based on illegal discrimination based on race and age.

53. The termination was also retaliatory, as Plaintiff had opposed Defendant's directive

to discriminate on the basis of race when handling disciplinary matters.

54. Because of Defendant's illegal termination of Plaintiff, Plaintiff has suffered substantial compensable damages, including past lost wages, future lost wages (front pay), significant pain, suffering and emotional trauma, and other damages.

55. Additionally, Plaintiff's employment contract stated that Plaintiff would be paid a guaranteed annual bonus of $7,200, to be paid on a quarterly basis.

56. Plaintiff worked the entire third quarter of 2018 but was never given his bonus of $1,800 for that quarter.

57. This bonus was a "wage" due to Plaintiff.

58. Defendant knew or should have known that Plaintiff was entitled to this "wage" at the time of his termination.

59. Defendant has willfully, deliberately, and intentionally refused to pay Plaintiff all wages due without justification despite demand by Plaintiff that Defendant pay this quarterly bonus.

## COUNT I

## UNLAWFUL DISCRIMINATION BASED ON RACE/COLOR

*Plaintiff sues Defendant pursuant to Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act*

60. Plaintiff hereby adopts and incorporates the allegations contained in all previous paragraphs as if fully restated herein.

61. Defendant has unlawfully discriminated against Plaintiff based on his race/color (white) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 *et seq*. as amended and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20-601, *et seq.*

62. Defendant treated Plaintiff less favorably than similarly situated employees who are not white.

63. Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his race in violation of Title VII and the MFEPA.

64. Plaintiff was subjected to intentional discrimination when Defendant took unjustified adverse employment actions against him based on his race and color.

65. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continue to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

66. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until the Court grants relief.

## COUNT II

## UNLAWFUL DISCRIMINATION BASED ON RACE

*Plaintiff sues Defendant pursuant to Section 1981 of the Civil Rights Act of 1866*

67. Plaintiff hereby adopts and incorporates the allegations contained in all previous paragraphs as if fully restated herein.

68. Plaintiff restates the allegations in Count I as the factual basis for Count II.

69. Defendant's unlawful and discriminatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

70. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until the Court grants relief.

## COUNT III

## UNLAWFUL DISCRIMINATION BASED ON AGE

*Plaintiff sues Defendant pursuant to the Age Discrimination in Employment Act of 1967 and the Maryland Fair Employment Practices Act*

71. Plaintiff hereby adopts and incorporates the allegations contained in all previous paragraphs as if fully restated herein.

72. Defendant has unlawfully discriminated against Plaintiff based on his age (44 at the time) in violation of the Age Discrimination in Employment Act of 1967 and the Maryland Fair Employment Practices Act.

73. Plaintiff is a member of a protected group based on his age.

74. Defendant treated Plaintiff less favorably than similarly situated employees who are not as old as Plaintiff.

75. Defendant has discriminated against Plaintiff in the terms and conditions of his employment on the basis of his protected group status (age) in violation of the ADEA and the MFEPA.

76. Plaintiff was subjected to intentional discrimination when Defendant took unjustified adverse employment action against him based on Plaintiff's age.

77. As a direct and proximate result of Defendant's unlawful and discriminatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

78. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until the Court grants relief.

## COUNT IV

## RETALIATION

*Plaintiff sues Defendant pursuant to Section 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964 and the Maryland Fair Employment Practices Act*

79. Plaintiff hereby adopts and incorporates the allegations contained in all previous paragraphs as if fully restated herein.

80. During Plaintiff's tenure with Defendant, Plaintiff continually and consistently objected to Defendant's discriminatory practices, including the discriminatory directive relating to employee discipline described herein.

81. Defendant has retaliated against Plaintiff for opposing and/or complaining of Defendant's discriminatory practices and policies by, *inter alia*, terminating Plaintiff.

82. As a direct and proximate result of Defendant's unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

83. Defendant's unlawful and retaliatory conduct in violation of Section 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT V

## VIOLATION OF THE MARYLAND WAGE PAYMENT AND COLLECTION LAW

84. Plaintiff hereby adopts and incorporates the allegations contained in all previous paragraphs as if fully restated herein.

85. The Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Empl. 3-501 *et seq*. requires that on termination, an "employer shall pay an employee . . . all wages due for work that the employee performed before the termination of employment, on or before the day which the employee would have been paid the wages if employment had not been terminated." Md. Code Ann., Lab. & Empl. § 3-505(a).

86. Plaintiff was entitled to be paid his contractually promised bonus for the third quarter on or before termination, as Plaintiff worked for the Defendant for the entire third quarter.

87. This unpaid bonus was a "wage" as defined in Md. Code Ann. Lab. & Empl. § 3-501(c)(2).

88. By failing to pay Plaintiff his wages when due, Defendant violated the Maryland Wage Payment and Collection Law.

89. Defendant failed to pay Plaintiff's wages willfully and in bad faith and not as the result of a bona fide dispute.

90. Plaintiff has made demand for payment of the wages, but Defendant has refused to pay the wages claimed by Plaintiff.

91. Pursuant to the Maryland Wage Payment and Collection Law, Plaintiff seeks his unpaid wages, treble damages, interest, reasonable attorneys' fees and costs, and any other relief deemed appropriate by this Honorable Court.

## **Prayer for Relief**

Based on the foregoing allegations, Plaintiff respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a) A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State of Maryland;

(b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

(e) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for their mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and related injuries;

(f) Order Defendant to pay Plaintiff all unpaid wage payments determined by the Court to be due and owing, under the MWPCL, as well as a sum of liquidated damages in an amount equal to the amount of any unpaid wage payments awarded to Plaintiff;

(g) Order Defendant to pay Plaintiff an amount equal to triple the amount of unpaid wages owed each Plaintiff under the MWPCL;

(h) Award Plaintiff his attorneys' fees and costs in pursuing this action;

(i) Award Plaintiff interest on any sums determined due and owing from Defendant, including pre-judgment interest on attorneys' fees and costs in pursuing this action;

(j) Grant Plaintiff any additional relief that the Court deems appropriate and just.

## JURY DEMAND

Plaintiff demands a jury trial for all claims presented in this action.

Respectfully submitted,

_____/S/  Matthew D. Skipper_____
Matthew D. Skipper
Bar No. 29866
Skipper Law, LLC
2127 Espey Court, Suite 100
Crofton, Maryland 21114
P: (443) 919-2121
F: (443) 919-2111
matt@skipperlawllc.com
*Attorney for Plaintiff*